IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EUGENE DICKERSON, | : | |
| Plaintiff, | : | 1:13-cv-1993 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| GARY GORDON, *et al.,* | : | |
| Defendants. | : | |

# **MEMORANDUM**

## **September 30, 2015**

Plaintiff Eugene Dickerson ("Dickerson"), a Pennsylvania state inmate, who, at all times relevant, was incarcerated at the State Correctional Institution at Dallas ("SCI-Dallas"), filed this civil rights action pursuant to 42 U.S.C. § 1983, on July 24, 2013. (Doc. 1). The complaint was amended on September 5, 2013 (Doc. 11), and supplemented on December 4, 2014 (Doc. 46). Named as defendants are the following Pennsylvania Department of Corrections employees: Gary Gordon ("Gordon"); Jerome Walsh ("Walsh"); Mike Skutack ("Skutack"); Cpt. Martin ("Martin"); C.O Beers ("Beers"); C.O. Zofcin ("Zofcin"); C.O. Hoover ("Hoover"); Lieutenant Musial ("Musial"); and Captain Pall ("Pall"). Dickerson primarily alleges that Defendant violated his First Amendment rights when they retaliated against him for filing grievances and pursuing litigation against Pennsylvania Department of Corrections employees

Presently pending is a motion to dismiss (Doc. 52) pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Pall and Musial, and a motion (Doc. 58) for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed by Defendants Gordon, Walsh, Skutack, Martin, Beers, Zofcin, Hoover, Musial and Pall. The Court declines to address the motion to dismiss filed by Pall and Musial choosing, instead, to solely address the motion for summary judgment filed by all defendants. For the reasons set forth below, the motion for summary judgment will be granted.

I. **STANDARD OF REVIEW**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York*

*Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x. 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also*

*Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## II.  STATEMENT OF MATERIAL FACTS

On July 29, 2012, while incarcerated at SCI-Dallas, Dickerson assaulted Inmate Bockes after Inmate Bockes spit in his face. (Doc. 60, ¶ 6; Doc. 79, ¶ 6). On that same date, he received a misconduct for fighting. (*Id.* at ¶ 7; *Id.* at ¶ 7). He was found guilty of the misconduct, sanctioned to ninety (90) days of disciplinary custody and the loss of his inmate job. (*Id.* at ¶ 7; *Id.* at ¶ 7). His appeal was unsuccessful on every level. (*Id.*; *Id.*) Dickerson alleges that there was a "separation" on file between him and Bockes. (Doc. 79, ¶¶ 8, 11). According to Defendant Martin, there was never such a separation on file. (Doc. 60, ¶¶ 8, 11). An inmate "separation" may be necessary when management has reason to believe that the failure to separate the inmate from another inmate, staff, or institution may

4

result in a physical assault or disruption to the safe operation of the facility. (*Id.* at ¶ 9; *Id.* at ¶ 9). An inmate's personal separation file contains "separations" for that inmate including documentation of the identity of the individual(s), inmate(s) or staff, and institution from which the inmate is separated and the reason for the separation. (*Id.* at ¶ 10; *Id.* at ¶ 10).

Following the assault, Dickerson willingly and voluntarily provided information to Defendant Martin about an alleged prostitution ring. (*Id.* at ¶ 13; *Id.* at ¶ 13). He contends that when he declined to provide information about any other alleged illegal activity, and indicated that he would file a grievance, Defendant Martin threatened him with more time in the RHU. (Doc. 79, ¶ 13). Defendant Martin denies threatening him. (Doc. 60, ¶ 13).

Dickerson had no objection to being released from the RHU to general population with Bockes. (*Id.* at ¶ 12; *Id.* at ¶ 12). However, in Grievance No. 463525 Dickerson grieved that being housed on the same housing unit with Bockes placed him at risk because Bockes was "disgruntled" by Dickerson's presence. (*Id.* at ¶ 14; *Id.* at ¶ 14). The grievance was resolved at initial review, and upheld at all levels of review, because by the time the grievance officer investigated the grievance, Dickerson and Bockes were no longer housed on the same housing unit. (*Id.* at ¶¶ 15-16; *Id.* at ¶¶ 15-16).

5

Dickerson filed Grievance No. 459239, complaining that on May 6, 2013, he was harassed when Defendant Gordon directed that he and his cousin be moved to separate housing blocks. (*Id.* at ¶ 21; *Id.* at ¶ 21). The grievance was denied at all levels of review. (*Id.*; *Id.*) Housing unit/cell moves are made by SCI-Dallas Unit Managers based on the needs of the facility and need of the inmates. (Doc. 60, ¶ 22). Inmates do not have a guarantee of a particular cellmate or a particular cell and cell moves are often made based on security concerns that are not disclosed to inmates. (*Id.* at ¶ 23; *Id.* at ¶ 23). Defendants contend that the move was due to the housing unit security concerns caused by Dickerson's suspected covert and illegal actions. (Doc. 60, ¶24).

Dickerson alleges that after he filed Grievance No. 459239 in May 2013, he was strip searched by Defendants Hoover and Zofcin. (*Id.* at ¶ 29; *Id.* at ¶ 29). Defendant Hoover allegedly told him that Defendant Gordon was "tired" of his grievances. (*Id.*) Defendants Hoover and Zofcin also allegedly trashed his cell and legal papers and verbally threatened him. (*Id.* at ¶ 30; *Id.* at ¶ 30). He filed Grievance No. 453468 against Defendants Hoover and Zofcin, but he later withdrew it (Doc. 60, ¶ 31), because Captain Cavalina allegedly threatened him with a misconduct and time in the RHU (Doc. 79, ¶ 31).

In Grievance No. 468086, Dickerson states that because other inmates were

6

refusing to cell with him due to his transgender status, on June 17, 2013, there was a move to have his cousin transferred back to his block and cell with him. (Doc. 60, ¶ 25; Doc. 79, ¶ 25). He states in the grievance that Defendant Gordon cancelled the move and that the cancellation of the move was retaliatory. (*Id.*; *Id.*) The grievance was denied at all levels of review. (*Id.* at ¶ 26; *Id.* at ¶ 26).

Dickerson alleges that in July 2013, when he complained to Defendant Walsh that he was "tired of being threatened, discriminated on, and treated differently because of grievances and sexual orientation, civil complaint, Sup. Walsh stated, "I have someone coming out the RHU tonight and going in your cell and if he reports later you've ceased the grievances, civil suites [sic], we'll grant any request you have." (*Id.* at ¶ 17; *Id.* at ¶ 17). Subsequent to this conversation, he was housed with Inmate Rosado. (*Id.* at ¶ 18; *Id.* at ¶¶ 17, 18). On July 4, 2013, he forwarded an inmate request to Defendant Skutack indicating that he was not concerned for his safety but for Rosado's because Rosado, a gang member and informant, was being threatened. (*Id.* at ¶¶18-19; *Id.* at ¶¶ 17-19; Doc. 62, p. 85). Thereafter, Dickerson indicated that Rosado "bullied, threatened, and made strong sexual advances towards [him]." His attempt at informal resolution was unsuccessful. (*Id.* at ¶ 20; *Id.* at ¶ 20). On July 5, 2013, he filed Grievance No. 468090 stating that Rosado made sexual advances against him. (*Id.*; *Id.*) He

7

subsequently withdrew the grievance. (*Id.*; *Id.*)

Dickerson alleges that he was harassed by constant cell searches. (*Id.* at ¶ 34; *Id.* at ¶ 34). Defendant Beers would come to his cell with a "message" from Defendant Gordon that, if Dickerson ceased filing grievances and civil complaints, the searches would stop. (*Id.*; *Id.*) Defendant Beers states he did not search Dickerson's cell; Dickerson states Defendant Beers randomly searched his cell on numerous occasions. (*Id.* at ¶ 35; *Id.* at ¶ 35). Dickerson alleges that he was informed by Beers that if he continued filing grievances and civil complaints he would remain in the RHU. (*Id.* at ¶ 35; *Id.* at ¶ 35).

On June 16, 2014, Dickerson received Misconduct B604786 charging him with theft by deception, a criminal violation of the Pennsylvania Crimes Code, and unauthorized use of the mail/telephone. (*Id.* at ¶ 44; *Id.* at ¶ 44). An investigation revealed that Dickerson, in concert with another inmate, contacted an inmate's mother and lied to her in order to obtain money. (*Id.* at ¶¶ 45-46; *Id.* at ¶¶ 45-46). Defendants indicate that this Misconduct resulted in a documented separation and required his transfer out of the institution. (Doc. 60 at ¶ 43).

Defendants Pall and Musial were allegedly the "instruments" of all Defendants to carry out repeated threats of a transfer of Dickerson to another institution if Dickerson did not stop filing grievances. (Doc. 60, ¶ 37; Doc. 79, ¶

37).  Dickerson was transferred from SCI-Dallas to the State Correctional Institution at Smithfield ("SCI-Smithfield") on June 27, 2014.  (*Id.* at ¶¶ 37, 38; *Id.* at ¶¶ 37, 38).  Dickerson alleges that his June 27, 2014 transfer to SCI-Smithfield was in retaliation for the filing of grievances and continued pursuit of his civil lawsuit.  (*Id.* at ¶ 37; *Id.* at ¶ 37, 43).

Between the dates of April 3, 2014, and December 23, 2014, Dickerson filed numerous grievances; none concerned the alleged retaliatory transfer and none involved either Defendant Pall or Defendant Musial.  (*Id.* at ¶¶ 39-42; *Id.* at ¶¶ 39-42).[1]

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Specifically, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  As the statute's language makes clear, the exhaustion of available

---

[1] Dickerson references exhibits "M," and "M-1," which he purports to be a grievance he submitted on July 9, 2014, but never processed, and a follow-up letter inquiring about the status of the grievance.  The Court has reviewed the documents filed to date and is unable to locate the documents Dickerson identifies as exhibits M and M-1.

9

administrative remedies prior to filing suit is mandatory. *See Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir.2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894–95 (S.D.N.Y. 1998)). Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. *See Small v. Camden County*, 728 F.3d. 265, 268 (3d Cir. 2013); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir.2010).

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Woodford v. Ngo*, 548 U.S. 81, 90–92 (2006). It requires compliance with the prison's "deadlines and other critical procedural rules." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 211–212 (2007).

The Pennsylvania Department of Corrections (DOC) Inmate Handbook

provides inmates with notice of requirements they must meet in resolving issues related to their incarceration through the multi-step "Inmate Grievance System" policy, DC-ADM 804. (Doc. 60, ¶¶ 1, 5; Doc. 79, ¶¶ 1, 5). Inmates must first file a grievance with the Facility Grievance Coordinator at the facility where the events upon which the grievance is based took place. (*Id.* at ¶ 2; *Id.* at ¶ 2). If dissatisfied with that response, the inmate can pursue an appeal to the Facility Manager or Superintendent of the facility. (*Id.* at ¶ 3; *Id.* at ¶ 3). If still dissatisfied, the inmate has the option to submit a final appeal to the Secretary's Office of Inmate Grievances and Appeals. (*Id.* at ¶ 4; *Id.* at ¶ 4).

Dickerson failed to exhaust available administrative remedies with respect to Defendants Walsh, Hoover, Skutack, Zofcin, Pall, and Musial in that he either failed to file a grievance concerning the claims against these Defendants in the first instance, or failed to pursue a grievance through all levels of review. He seeks to excuse compliance with the exhaustion requirement stating that he faced threats of retaliation. However, fear of retaliation has not been recognized as a basis for excusing a prisoner's failure to exhaust. Absent extraordinary circumstances, courts have rejected efforts to be excused from exhaustion, or to have their exhaustion requirements tolled, due to alleged fear of staff retaliation. *Pena–Ruiz v. Solorzano*, 281 F. App'x, 110, 113 (3d Cir. 2008); *McEachin v. Beard*, 136 F.

11

App'x 534, 535 (3d Cir. 2005); *Hill v. Smith*, 4:05–CV1724, 2005 WL 2666597 (M.D.Pa. Oct.19, 2005). Dickerson has pleaded no such extraordinary circumstances. Because Dickerson has not exhausted his administrative remedies with respect to Defendants Walsh, Skutack, Hoover, Zofcin, Pall and Musial, they are entitled to an entry of summary judgment.

Moreover, it is clear from the record that Dickerson failed to exhaust the claim that the transfer to SCI-Smithfield was retaliatory in that he did not file a single grievance challenging the transfer. Defendants are therefore entitled to an entry of summary judgment with respect to this claim.

## IV. DISCUSSION

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a

plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001) (quoting *Allah*, 229 F.3d at 225).

With respect to the first and second *Rauser* prongs, "[a]lthough the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting—whether activity is 'protected' or an action is 'adverse' will depend on context. Standing in his cell in a prison, an

13

inmate is quite limited in what he can say; his government jailor can impose speech-limiting regulations that are 'reasonably related to legitimate penological interests.' *Turner v. Safley*, 482 U.S. 78, 89 (1987). The fact that certain conduct of the plaintiff must be 'protected' in order to state a claim does not change with the setting—what changes is the type of conduct deemed protected in that particular setting." *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). The fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates. *See Pell v. Procunier*, 417 U.S. 817, 822-23 (1974). Thus, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.* at 822.

The last *Rauser* prong requires a prisoner to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. The court employs a burden-shifting regime to determine whether a causal link exists. The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. *See id*. (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The burden then shifts to

the defendants to prove by a preponderance of the evidence that they would have taken the same action even in the absence of the protected activity. *See id.* If defendants prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action. *See id.* at 334.

Dickerson's allegation that he was retaliated against because he pursued litigation against DOC personnel implicates conduct protected by the First Amendment sufficient to satisfy the first prong of the *Rauser* test. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Likewise, filing an administrative grievance against prison officials is a protected activity for purposes of a retaliation claim. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006).

Conversely, the threat of filing a grievance is not considered protected activity. *Griffin-El v. Beard*, Civ. No. 06–2719, 2013 WL 228098 (E.D. Pa. Jan 22, 2013); *Stewart v. Varano*, Civ. No. 1:10–CV–1701, 2011 WL 3585409 (M.D.Pa. Aug.15, 2011). The protected activity is the actual filing of the grievance; it is not the intent to, or threat of, engaging in that speech. Dickerson therefore fails to establish that he was engaged in protected activity such that he can pursue a retaliation claim against Defendant Martin. Summary judgment will be entered in Defendant Martin's favor.

Dickerson contends that he suffered adverse action in the form of verbal harassment and random cell searches by Defendants Gordon and Beers. General verbal harassment and antagonizing have been found to not constitute an actionable adverse action. *See Marten v. Hunt*, 479 F. App'x 436 (3d Cir. 2012); *Frazier v. Daniels*, No. 09-2316, 2010 WL 2040763, at * 11 (E.D. Pa. May 20, 2010); *Burgos v. Canino*, 641 F. Supp.2d 443, 456 (E.D. Pa. 2009). Further, courts have consistently held that a cell search is not an "adverse action" for retaliation purposes. *See, e.g., Brooks v. Smith*, No. 3:CV-04-2680, 2007 WL 3275266, at * 2 (M.D.Pa. Nov.6, 2007) (finding that "retaliation claim premised on pat searches and cell searches . . . could not serve as the requisite 'adverse action' to support a retaliation claim"); *Lashley v. Wakefield*, 367 F. Supp.2d 461, 470 (W.D.N.Y. 2005) (stating "[i]t is well-settled . . . that plaintiff cannot base a retaliation claim . . . based solely on cell searches and summary judgment is warranted"); *Salahuddin v. Mead*, No. 95 Civ. 8581 (MBM), 2002 WL 1968329, at * 5 (S.D.N.Y. Aug. 26, 2002) (dismissing retaliation claim based on cell searches, finding that plaintiff suffered no adverse action). Dickerson does not establish that the actions taken by Defendants Gordon and Beers were sufficiently adverse. Consequently, they are entitled to an entry of summary judgment with respect to this claim.

Dickerson also alleges that in retaliation for filing grievances, Defendant Gordon separated him from his cousin by moving him to a different housing unit, and cancelled a cell move that would have allowed him to be housed with his cousin. The Court finds that these changes in cell assignments were not sufficiently adverse to deter a person of ordinary firmness from exercising his constitutional rights. Although courts have found that cell transfers to undesirable areas of a prison could have a strong deterrent effect, *see Thaddeus–X v. Blatter*, 175 F.3d 378, 399 (6th Cir.1999) (finding placement in area of prison used to house mentally disturbed inmates combined with harassment and physical threats could constitute a sufficient adverse action for retaliation purposes), *Allah*, 229 F.3d at 225–26 (holding that continued placement in administrative confinement which resulted in reduced privileges could deter a person of ordinary firmness from exercising his First Amendment rights), whether a prisoner has met this prong of his retaliation claim will depend on the facts of the particular case, *Allah*, 229 F.3d at 225. Dickerson speculates that Defendant Gordon moved him to a different housing unit and cancelled a planned cell move for the sole purpose of harassing him by separating him from his cousin. Simply moving him to a different housing unit, and failing to allow him to cell with the inmate of his choice, cannot be considered "adverse actions" sufficient to deter a person of ordinary firmness from

exercising his constitutional rights. *See Murray v. Bledsoe*, 650 F. 3d 246, 247 (3d Cir. 2011) (observing that "those courts confronted with the question of whether inmates have a constitutional right to choose a cellmate have held that no such right exists.") (citations omitted)); *See Griffin v. Williams*, No. 1:CV-10-02472, 2011 WL 3501787 (M.D. Pa. Aug. 10, 2011) (dismissing plaintiff's claim that his cell move from one double-bunk cell to another double-bunk cell in the same cell block was an adverse action sufficient to deter him from exercising his constitutional rights). In fact, Dickerson concedes that he has no guarantee of a particular cellmate or a particular cell and that often, cell moves are made for reasons to which inmates are not privy due to institutional security. (Doc. 60, ¶ 23; Doc. 79, ¶ 23). As such, Defendant Gordon is entitled to summary judgment on this claim of retaliation.

**V.  CONCLUSION**

Based on the foregoing, Defendants' motion for summary judgment will be granted.

An appropriate order will enter.